T.C. Memo. 2007-47

UNITED STATES TAX COURT

ROGER D. AND MARY M. CATLOW, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11319-05L.          Filed March 1, 2007.


Terri A. Merriam, Jennifer A. Gellner, Jaret R. Coles, and
Asher B. Bearman, for petitioners.[1]

Thomas N. Tomashek and Gregory M. Hahn, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Petitioners petitioned the Court under section
6330(d) to review the determination of respondent's Office of

_____

[1] Pursuant to their requests, Jennifer A. Gellner and Asher
B. Bearman were allowed to withdraw on Nov. 14 and 17, 2006,
respectively.

Appeals (Appeals) sustaining a proposed levy relating to $541,620 of Federal income taxes (inclusive of additions to tax, penalties, and interest) owed by petitioners for 1981 through 1991.[2]  Petitioners argue that Appeals was required to accept their offer of $35,000 to compromise what they estimate is their approximately $575,000 Federal income tax liability for 1981 through 1998.[3]  We decide whether Appeals abused its discretion in rejecting that offer.[4]  We hold it did not.

FINDINGS OF FACT

The parties filed with the Court stipulations of fact and accompanying exhibits.  The stipulated facts are found accordingly.  When the petition was filed, petitioners resided in Mattawa, Washington.

---

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Dollar amounts are rounded.

[3] Petitioners submitted to respondent Form 656, Offer in Compromise, indicating that they were offering to compromise their tax liability for 1981 through 1996.  However, petitioners also submitted to respondent a letter accompanying the Form 656 in which they stated that they wished to compromise their tax liability for 1981 through 1998.  We read petitioners' offer to include the years 1981 through 1998.

[4] Petitioners also dispute respondent's determination that they are liable for increased interest under sec. 6621(c).  This interest relates to deficiencies attributable to "computational adjustments", see secs. 6230(a)(1) and 6231(a)(6), made following the Court's decision in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515.  As to this dispute, the parties have agreed to be bound by a final decision in Ertz v. Commissioner, docket No. 20336-04L, which involves a similar issue.

Beginning in 1984, petitioners' Federal income tax returns claimed losses and credits from their investment in a partnership organized and operated by Walter J. Hoyt III (Hoyt). The partnership was Shorthorn Genetic Engineering 1984-5. Hoyt was the partnership's general partner and tax matters partner, and the partnership was subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648. Hoyt was convicted on criminal charges relating to the promotion of this and other partnerships.

Petitioners' claim to the losses and credits resulted in the underreporting of their 1981 through 1991 taxable income. On May 9, 2003, respondent mailed to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice informed petitioners that respondent proposed to levy on their property to collect Federal income taxes that they owed for 1981 through 1991. The notice advised petitioners that they were entitled to a hearing with Appeals to review the propriety of the proposed levy.

On May 29, 2003, petitioners asked Appeals for the referenced hearing. On March 25, 2004, Linda Cochran (Cochran), a settlement officer in Appeals, held the hearing with petitioners' counsel. Cochran and petitioners' counsel discussed two issues. The first issue concerned petitioners' intent to

offer to compromise their 1981 through 1998 Federal income tax liability due to doubt as to collectibility with special circumstances and to promote effective tax administration. Petitioners contended that Appeals should accept their offer as a matter of equity and public policy. Petitioners stated that it had taken a long time to resolve the Hoyt partnership cases and noted that Hoyt had been convicted on the criminal charges. The second issue concerned an interest abatement case under section 6404(e) that petitioners mistakenly stated they had pending with respondent.[5] Petitioners stated that the interest abatement case related to the same years at issue here and that the proposed levy should be rejected because that case was pending.[6]

On May 7, 2004, petitioners tendered to Cochran on Form 656, Offer in Compromise, a written offer to pay $35,000 to compromise their estimated approximately $575,000 liability. Petitioners supplemented their offer with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, four letters totaling approximately 80 pages, and volumes of documents. The Form 433-A reported that petitioners

---

[5] While petitioners stated that they had the interest abatement case pending in this Court, they never petitioned this Court with respect to the interest abatement issue.

[6] Petitioner Mary Catlow also requested relief under sec. 6015(b) and (f). In that Mary Catlow later agreed that she was not entitled to her requested relief, petitioners do not advance that claim in this proceeding.

owned assets with a total current value of $177,598, inclusive of the following:[7]

|              Assets              | Current value |
|----------------------------------|---------------|
| Cash in accounts                 | $13,418       |
| Retirement accounts              | 105,440       |
| Furniture/personal effects       | 3,000         |
| Real Estate                      | 36,000        |
| Mobile home                      | 8,950         |
| Vehicles:                        |               |
|   1977 Ford Van        | de minimis    |
|   1981 VW Pickup       | -0-           |
|   1990 VW Jetta        | 460           |
|   2001 VW Passat       | 10,330        |
|                                  | 177,598       |

The Form 433-A also reported that petitioners had a single debt of $7,948, which was attributable to the 2001 VW Passat, and the following monthly items of income and expense:

| Item of income    | Amount  |
|-------------------|---------|
| Husband's pension | $4,551  |

| Items of expense                     | Amount  |
|--------------------------------------|---------|
| Food, clothing, and miscellaneous    | $1,271  |
| Housing                              | 682     |
| Transportation                       | 1,244   |
| Medical expenses                     | 1,103   |
| Taxes (Income)                       | 446     |
| Life insurance                       | 5       |
| Other expenses                       | 400     |
|                                      | 5,151   |

---

[7] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "the amount you could sell the asset for today".

Cochran determined that petitioners' net realizable equity in their cash was the $13,110 reported in their bank accounts[8] and that petitioners' net realizable equity in their retirement accounts and real estate was the same as the reported values. Cochran reduced the reported value of the vehicles and mobile home by 20 percent to reflect their quick sale value. She also noted the encumbrance on the 2001 VW Passat and allowed a $7,200 exemption[9] under section 6334(a)(2) for the motor home.[10] Cochran summarized petitioners' assets and liabilities as follows:

| Assets | Fair market value | Quick sale value | Encumbrance/ exemption | Net realizable equity |
|---|---|---|---|---|
| Cash/bank | $13,110 | -- | -- | $13,110 |
| Retirement accounts | 105,440 | -- | -- | 105,440 |
| Real estate | 36,000 | -- | -- | 36,000 |
| Mobile home | 8,950 | $7,160 | $7,200 | -0- |
| Vehicles: | | | | |
| 1990 VW Jetta | 480 | 384 | -- | 384 |
| 2001 VW Passat | 10,330 | 8,264 | 7,948 | [1]296 |
| | 174,310 | 15,808 | 15,148 | 155,230 |

[1] There is a $20 discrepancy that is immaterial to our analysis.

As to the reported expenses, Cochran accepted petitioners' figures for their housing, taxes, life insurance, and other expenses. Cochran made some adjustments to petitioners' claimed

_____

[8] Petitioners had actually reported that they had $13,418 in their bank accounts. However, $308 of this amount was listed on a separate document that supplemented the Form 433-A; it appears that Cochran overlooked this item.

[9] Whereas sec. 6334(a)(2) limits this exemption to $6,250, Cochran does not explain in the notice of determination why she allowed petitioners the greater amount.

[10] Cochran did not take into account $3000 of furniture and personal effects that petitioners had listed on their Form 433-A.

expenses for food, clothing, miscellaneous items, transportation, and health care. First, Cochran determined that petitioners were allowed a food, clothing, and miscellaneous items expense of $1,020 instead of the $1,271 that they claimed. Cochran stated that she made this adjustment in accordance with current national guidelines and that she considered petitioners' particular circumstances but that they did not warrant allowing the higher figure submitted by petitioners. Cochran also reduced petitioners' transportation expenses from $1,244 to $902 in accordance with the applicable guidelines. Finally, Cochran adjusted petitioners' allowable health care expenses from the $1,103 that they claimed on their Form 433-A to $300. Cochran noted that petitioners had not mentioned any health issues nor provided any documentation of medical bills. She also commented that the only health care-related expense that petitioners had documented was a long-term care insurance policy expense of $182 a month. In sum, Cochran reduced petitioners' monthly allowable expenses to $3,755.

Cochran determined that petitioners' monthly excess income (i.e., monthly income less monthly expenses) was $796 ($4,551 - $3,755), that petitioners' income potential for the next 48 months was approximately $38,208 ($796 x 48 = $38,208),[11] and

---

[11] Cochran used a 48-month factor because petitioners were offering to compromise their tax liability by paying cash. See
(continued...)

that petitioners' reasonable collection potential was $193,438 (future income potential of $38,208 + net realizable equity of $155,230).

On May 19, 2005, Appeals issued petitioners the notice of determination sustaining the proposed levy. The notice concludes that petitioners' $35,000 offer-in-compromise is not an appropriate collection alternative to the proposed levy. The notice, citing Internal Revenue Manual (IRM) sections 5.8.5.5.1 and 5.8.5.3.1, states that petitioners' offer does not meet the Commissioner's guidelines for consideration of an offer-in-compromise due to doubt as to collectibility with special circumstances. The notice, citing IRM section 5.8.11.1(3), states that petitioners' offer also does not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration.

As to petitioners' offer-in-compromise due to doubt as to collectibility with special circumstances, the notice states:

> the taxpayers [petitioners] have the ability to pay more than the offer amount from either the equity in their assets or their income stream while still meeting their necessary basic living expenses, in accordance with IRM 5.8.5.5.1. The taxpayers' representative contended that the taxpayers' equity in their assets and any collection potential from future income should be offset against possible future expenses that might be incurred throughout the rest of the taxpayers' lives. The Settlement Officer noted, however, that

---

[11](...continued)
Internal Revenue Manual (IRM) sec. 5.8.5.5.

these possible future expenses are general projections from the taxpayers' representative and may never, in fact, be incurred. The present offer, therefore, must be considered within the framework of present facts.

The taxpayers have an ability to pay substantially more than the amount being offered, as per the guidelines of Internal Revenue Manual 5.8.5.3.1. The taxpayers' circumstances have been documented and considered but are insufficient to permit acceptance of an offer amount that is 18% of the RCP [reasonable collection potential] ($35,000/$193,438).

As to petitioners' offer-in-compromise to promote effective tax administration, the notice states:

Analysis of the taxpayers' finances shows that the taxpayers' equity in assets plus present and future income are less than the assessed amounts to be compromised. The taxpayers, therefore, fail to meet the requirements for consideration of an offer in compromise based on Effective Tax Administration, as per the guidelines of Internal Revenue Manual 5.8.11.1(3).

The notice further states as to Cochran's balancing of efficient collection with the legitimate concerns of taxpayers that

The taxpayers' concerns about the proposed collection action generally fall within two areas: (1) pending litigation (the innocent spouse case and the interest abatement case) and (2) a viable collection alternative in the form of their $35,000 offer in compromise.

The Settlement Officer has balanced the taxpayers' first area of concern by researching both cases. The Settlement Officer confirmed that on February 25, 2005 a stipulation has [sic] been entered into [sic] Tax Court regarding the taxpayer-wife's innocent spouse case. In that stipulation, with [sic] the taxpayer-wife conceding [sic] that she is not entitled to relief under IRC § 6015(b), (c), or (f), and that she waives the restrictions of IRC § 6015(e)(1)(B)(i). The Settlement Officer also researched the taxpayers' interest abatement case and was unable to locate evidence that this case has been considered by IRS to

> date.  As a result, the Settlement Officer considered
> the taxpayers' request for interest abatement within
> the present hearing.
>
> With respect to the taxpayers' second area of concern,
> the Settlement Officer has evaluated the taxpayers'
> $35,000 offer to compromise the underlying liabilities
> as a collection alternative to the proposed levy
> action.  Based on that evaluation, the taxpayers' offer
> of $35,000 could not be recommended for acceptance, and
> therefore cannot be considered as a collection
> alternative.  The taxpayers requested no other
> collection alternative to be considered.
> In all other respects, therefore, the proposed levy
> action regarding the taxpayers represents the only
> efficient means for collection of the liability at
> issue in this case.

The notice states that petitioners have neither offered an

argument nor cited any authority to permit Appeals to deviate

from the provisions of the IRM.

As to petitioners' claim at the hearing for an interest

abatement, Cochran ascertained that petitioners had previously

filed a request for interest abatement with respondent but that

the request had not yet been acted upon.  She therefore

considered the interest abatement request as part of petitioners'

hearing. Cochran ultimately determined that petitioners were not

entitled to their claim for an abatement of interest, either

under section 6404(e) or as part of an offer-in-compromise.

                            OPINION

This case is yet another in a long list of cases brought in

this Court involving respondent's proposal to levy on the assets

of a partner in a Hoyt partnership to collect Federal income

taxes attributable to the partner's participation in the partnership. Petitioners argue that Appeals was required to let them pay $35,000 to compromise what they estimate is their approximately $575,000 Federal income tax liability for 1981 through 1998. Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review the determination of Appeals for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); see also Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150. We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Cox v. Commissioner, 126 T.C. 237, 255 (2006); Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Where, as here, we decide the propriety of Appeals's rejection of an offer-in-compromise, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise. See Murphy v. Commissioner, supra at 320; see also Clayton v. Commissioner, supra; Barnes v. Commissioner, supra; Fowler v. Commissioner, T.C. Memo. 2004-163; Fargo v. Commissioner, T.C. Memo. 2004-13, affd. 447 F.3d 706

(9th Cir. 2006). Nor do we usually consider arguments, issues, or other matters raised for the first time at trial, but we limit ourselves to matter brought to the attention of Appeals. See Murphy v. Commissioner, supra at 308; Magana v. Commissioner, 118 T.C. 488, 493 (2002). "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not relevant to the question of whether the Appeals officer abused her discretion." Murphy v. Commissioner, supra at 315.[12]

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Section 7122(c) authorizes the Commissioner to

_____

[12] In Murphy v. Commissioner, 125 T.C. 301 (2005), affd. 469 F.3d 27 (1st Cir. 2006), the Court declined to include in the record external evidence relating to facts not presented to Appeals. The Court distinguished Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), and held that the external evidence was inadmissible in that it was not relevant to the issue of whether Appeals abused its discretion. In a memorandum that petitioners filed with the Court on Apr. 13, 2006, pursuant to an order of the Court directing petitioners to explain the relevancy of any external evidence that they desired to include in the record of this case, petitioners made no claim that they had offered any of the external evidence to Cochran. Instead, as we read petitioners' memorandum in the light of the record as a whole, petitioners wanted to include the external evidence in the record of this case to prove that Cochran abused her discretion by not considering facts and documents that they had consciously decided not to give to her. Consistent with Murphy v. Commissioner, supra, we sustained respondent's relevancy objections to the external evidence. Accord Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150.

prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs.

Petitioners argue that respondent was required to compromise their tax liability on the bases of the latter two grounds. As to the first of these grounds, the Commissioner may compromise a tax liability due to doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the assessed liability. See sec. 301.7122-1(b)(2), Proced. & Admin. Regs. In such a case, the Commissioner also may accept an offer-in-compromise due to doubt as to collectibility with special circumstances; i.e., the Commissioner may accept an offer of less than the total reasonable collection potential of the case. See Rev. Proc. 2003-71, sec. 4.02, 2003-2 C.B. 517, 517. As to the second ground, the Commissioner may compromise a tax liability to promote effective tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general. See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin.

Regs.  If a taxpayer does not qualify for the just stated effective tax administration compromise on grounds of economic hardship, and does not qualify for an offer-in-compromise due to doubt as to either liability or collectibility, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity.  See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Petitioners made their offer-in-compromise due to doubt as to collectibility with special circumstances and to promote effective tax administration.  Petitioners reported on their Form 433-A that they had assets worth $169,650 (i.e., their assets' total reported current value of $177,598 minus a $7,948 encumbrance on their VW Passat).  Cochran determined petitioners' reasonable collection potential to be $193,438.  Therefore, petitioners cannot fully pay their estimated $575,000 tax liability and thus do not qualify for an offer-in-compromise to promote effective tax administration.  See sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; cf. Fargo v. Commissioner, 447 F.3d 706 (9th Cir. 2006) (taxpayers made an offer-in-compromise to promote effective tax administration where they had sufficient assets to pay their tax liability in full).  As to petitioners' offer-in-compromise due to doubt as to collectibility with special circumstances, the Commissioner evaluates such an offer by

applying the same factors (economic hardship or considerations of public policy or equity) as in the case of an offer-in-compromise to promote effective tax administration.  See IRM sec. 5.8.11.2.1 and .2.  In accordance with the Commissioner's guidelines, an offer-in-compromise due to doubt as to collectibility with special circumstances should not be accepted even when economic hardship or considerations of public policy or equity circumstances are identified, if the taxpayer does not offer an acceptable amount.  See IRM sec. 5.8.11.2.1(11).

Cochran considered all of the evidence submitted to her by petitioners and applied the guidelines for evaluating an offer-in-compromise due to doubt as to collectibility with special circumstances or to promote effective tax administration. As to the former, Cochran determined that petitioners' offer was unacceptable because they were able to pay more than the $35,000 that they offered to compromise their tax liability.  As to the latter, Cochran determined that petitioners' offer did not qualify as an offer-in-compromise to promote effective tax administration because petitioners were unable to pay their liability in full.  Cochran's determination to reject petitioners' offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive or unfair to petitioners.  Cochran's determination was based on a reasonable application of the guidelines, which we decline to

second-guess. See <u>Speltz v. Commissioner</u>, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006); <u>Clayton v. Commissioner</u>, T.C. Memo. 2006-188; <u>Barnes v. Commissioner</u>, T.C. Memo. 2006-150.

Petitioners make eight arguments in advocating a contrary result. First, petitioners argue that the Court lacks jurisdiction to review the rejection of their offer-in-compromise. Petitioners allege that Hoyt had a conflict of interest that prevented him from extending the periods of limitation for the partnerships in which petitioners were partners. Petitioners conclude that any consents signed by Hoyt to extend the periods of limitation were invalid, which in turn means that the Court lacks jurisdiction because the applicable periods of limitation have otherwise expired.

Petitioners' challenge to this Court's jurisdiction is groundless, frivolous, and unavailing. It is well settled that the expiration of the period of limitation is an affirmative defense and not a factor of this Court's jurisdiction. See <u>Day v. McDonough</u>, 547 U.S. ___, ___, 126 S. Ct. 1675, 1681 (2006) ("A statute of limitations defense * * * is not 'jurisdictional'"); <u>Kontrick v. Ryan</u>, 540 U.S. 443, 458 (2004) ("Time bars * * * generally must be raised in an answer or responsive pleading."); see also <u>Davenport Recycling Associates v. Commissioner</u>, 220 F.3d 1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; <u>Chimblo v. Commissioner</u>, 177 F.3d 119, 125 (2d Cir. 1999), affg. T.C.

Memo. 1997-535; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where, as here, the claim of a time bar relates to items of a partnership, the claim must be made in the partnership proceeding and may not be considered at a proceeding involving the personal income tax liability of one or more of the partners of the partnership. See Davenport Recycling Associates v. Commissioner, supra at 1259-1260; Chimblo v. Commissioner, supra at 125; Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998).

Second, petitioners argue that Cochran's rejection of their offer-in-compromise conflicts with the congressional committee reports underlying the enactment of section 7122. According to petitioners, their case is a "longstanding" case, and those reports require that respondent resolve such cases by forgiving interest and penalties that otherwise apply. We disagree with petitioners' reading and application of the legislative history underlying section 7122. Petitioners' argument on this point is essentially the same argument that was considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. We do likewise here for the same reasons stated in that opinion. We add that petitioners' counsel participated in the appeal in Fargo v. Commissioner, supra, as counsel for the amici. While petitioners in their

brief suggest that the Court of Appeals for the Ninth Circuit knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioners), and otherwise to allow those clients to receive an abatement of their liability attributable to partnerships such as those here, we do not read the opinion of the Court of Appeals for the Ninth Circuit in Fargo to support that conclusion.

Third, petitioners argue that Cochran inadequately considered their unique facts and circumstances. We disagree. Cochran reviewed and considered all information given to her by petitioners. On the basis of the facts and circumstances of petitioners' case as they had been presented to her, Cochran determined that petitioners' offer did not meet the applicable guidelines for acceptance of an offer-in-compromise due to doubt as to collectibility with special circumstances or to promote effective tax administration. We find no abuse of discretion in that determination. Nor do we find that Cochran inadequately considered the information actually given to her by petitioners. In fact, Cochran computed petitioners' future income potential by using the same income figures that petitioners reported on their Form 433-A, and the reported item of income was a type of retirement income that could reasonably be expected to remain constant over the next 48 months. The record also shows that

Cochran conducted a thorough review of the documentation submitted to her by petitioners.  Petitioners acknowledged that they had no "extraordinary health issues" yet claimed monthly health care expenses of $1,103.  Cochran reviewed the Form 433-A and found that petitioners' only documented health-related expense was a monthly long-term care insurance premium of $182.  Nonetheless, she allowed petitioners a monthly health care expense of $300.  Although petitioners believe that Cochran's calculation should have reflected increased medical expenses in the 48-month period and thereafter, we do not agree.  See Fargo v. Commissioner, 447 F.3d at 710 (it is not an abuse of discretion to disregard claimed medical expenses that are speculative or not related to the taxpayer).  Moreover, besides their health care expenses, Cochran gave petitioners the benefit of the doubt in other instances as well.  For example, she accepted petitioners' claimed values of their vehicles even though they provided no substantiation of this and also claimed that some of their vehicles had either no or de minimis value.  Cochran also accepted petitioners' valuation of their real estate and mobile home even though they obtained these values from tax assessments and the fair market value of these properties could have been higher.  Although Cochran made some adjustments to some of petitioners' claimed expenses, she did so in accordance with the Commissioner's national and local guidelines and after

evaluating petitioners' particular circumstances.  We find no abuse of discretion in these adjustments.

Fourth, petitioners argue that Cochran did not adequately take into account the economic hardship they claim they will suffer by having to pay more than $35,000 as to their tax liability.  We disagree.  Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses."  Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some illustrative examples.  One of the examples involves a taxpayer who provides full-time care to a dependent child with a serious long-term illness.  A second example involves a taxpayer who would lack adequate means to pay his basic living expenses were his only asset to be liquidated.  A third example involves a disabled taxpayer with a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because of his disability.  See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs.  None of these examples bears any resemblance to this case but instead "describe more dire circumstances".  Speltz v. Commissioner, 454 F.3d at 786.

Nor have petitioners articulated with any specificity the purported economic hardship they will suffer if they are not allowed to compromise their liability for $35,000. While petitioners claim generally that the sale of their residence would create an economic hardship in that they would be unable to afford paying either rent or a mortgage, this claim is vague, speculative, undocumented, and unavailing.[13] See Barnes v. Commissioner, T.C. Memo. 2006-150.

We also are mindful that any decision by Cochran to accept petitioners' offer-in-compromise due to doubt as to collectibility with special circumstances must be viewed against the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs. That section requires that Cochran deny petitioners' offer if her acceptance of it would undermine voluntary compliance with tax laws by taxpayers in general. Thus, even if we were to assume arguendo that petitioners would suffer economic hardship, a finding that we emphasize we decline to make, we would not find that Cochran's rejection of petitioners' offer was an abuse of discretion because we conclude below (in our discussion of petitioners' fifth argument) that her acceptance of that offer

---

[13] We note that our opinion here does not necessarily mean that respondent may in fact levy on petitioners' residence in payment of their tax debt. Pursuant to sec. 6334(a)(13)(B) and (e), a taxpayer's principal residence is exempt from levy absent the written approval of a U.S. District Court Judge or Magistrate. See also sec. 301.6334-1(d), Proced. & Admin. Regs.

would have undermined voluntary compliance with tax laws by taxpayers in general.  The prospect that acceptance of an offer will undermine compliance with the tax laws militates against its acceptance whether the offer is predicated on promotion of effective tax administration or on doubt as to collectibility with special circumstances.  See Rev. Proc. 2003-71, sec. 4.02, 2003-2 C.B. 517; see also IRM sec. 5.8.11.2.2.

Fifth, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud.  We disagree.  While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples.  See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs.  The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years.  The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions.  Neither example bears any resemblance to this case.  See Speltz v. Commissioner, 454 F.3d at 786.  Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that petitioners' situation mirrors that of numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their "investment", and now realize that paying their taxes

may require a change of lifestyle.[14]  See <u>Clayton v. Commissioner</u>, T.C. Memo. 2006-188; <u>Barnes v. Commissioner</u>, <u>supra</u>.

We also believe that compromising petitioners' case on grounds of public policy or equity would not promote effective tax administration.  While petitioners portray themselves as victims of Hoyt's alleged fraud and respondent's alleged delay in dealing with Hoyt, they take no responsibility for their tax predicament.  We cannot agree that acceptance by respondent of petitioners' $35,000 offer to satisfy their estimated approximately $575,000 tax liability would enhance voluntary compliance by other taxpayers.  A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter.  It would be particularly inappropriate for the Government to play that role here, where

---

[14] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners' situation is not identical to that of the taxpayers in <u>Fargo v. Commissioner</u>, 447 F.3d at 714, regarding whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in Hoyt's shelters to be culpable of negligence, see, e.g., <u>Keller v. Commissioner</u>, T.C. Memo. 2006-131, nor prevented the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits from affirming our decisions to that effect in <u>Hansen v. Commissioner</u>, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; <u>Mortensen v. Commissioner</u>, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; and <u>Van Scoten v. Commissioner</u>, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

the transaction at issue involves a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[15] See Clayton v. Commissioner, supra; Barnes v. Commissioner, supra.

Sixth, petitioners argue that Cochran failed to balance efficient collection with the legitimate concern that collection be no more intrusive than necessary. We disagree. Cochran thoroughly considered this balancing issue on the basis of the information and proposed collection alternative given to her by petitioners. She concluded that "the proposed levy action regarding the taxpayers represents the only efficient means for collection of the liability at issue in this case". While petitioners assert that Cochran did not consider all of the facts and circumstances of this case, "including whether the circumstances of a particular case warrant acceptance of an amount that might not otherwise be acceptable under the

---

[15] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in IRM sec. 5.8.11.2.2 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a "longstanding" case by petitioners' standards, the offer was not acceptable because acceptance of it would undermine compliance with the tax laws.

Secretary's policies and procedures", sec. 301.7122-1(c)(1), Proced. & Admin. Regs., we find to the contrary. Cochran thoroughly considered petitioners' arguments for accepting their offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay much more of their tax liability than the $35,000 they offered. Cf. IRM sec. 5.8.11.2.1(11) ("When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

Seventh, petitioners argue that Cochran inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. While Cochran declined to accept petitioners' request to reject the proposed levy because she had considered their request for interest abatement and found that they were not entitled to such relief, we find nothing to suggest that Cochran believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e), Cochran obviously would have abated interest in this case had she agreed to let petitioners compromise their estimated approximately $575,000 liability by paying less than the amount of interest included within that liability.

Eighth, petitioners argue that Cochran erred by not informing petitioners of the contents of the notice of

determination before it was issued.  We disagree.  We do not believe that Cochran abused her discretion by rejecting petitioners' offer-in-compromise simply because she may not have discussed with petitioners the contents of the notice of determination (and given them a chance to dispute it) before issuing the notice of determination to them.  Cf. <u>Fargo v. Commissioner</u>, 447 F.3d at 712-713 (holding that Appeals has no duty to negotiate with a taxpayer before rejecting the taxpayer's offer-in-compromise).

We hold that Appeals did not abuse its discretion in rejecting petitioners' $35,000 offer-in-compromise.  In so holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept.  The only issue before us is whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $35,000.  See <u>Speltz v. Commissioner</u>, 124 T.C. at 179-180.  We have considered all arguments made by petitioners for a contrary holding and have found those arguments not discussed herein to be without merit.

<u>An appropriate order</u>

<u>will be issued</u>.