T.C. Memo. 2013-261

UNITED STATES TAX COURT

LARRY F. ANDERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2955-11L.                      Filed November 18, 2013.

In 2001 P was convicted of tax crimes, including I.R.C. sec. 7201 tax evasion with respect to his 1991 tax year. R assessed an I.R.C. sec. 6663(a) civil fraud penalty of $23,104 for the 1991 tax year in August 2008. R issued notice and demand for payment of the $23,104 penalty plus interest of $53,385. P offered to compromise this liability, but R rejected the offer and filed a notice of Federal tax lien (NFTL). P then timely requested a collection due process hearing to review the rejection of his offer-in-compromise and the filing of the NFTL. Appeals rejected the offer-in-compromise and sustained the filing of the NFTL.

Held: The administrative record is insufficient to determine whether Appeals appropriately considered P's health. Remand to clarify and supplement the record is appropriate.

[*2]   Sean L. Anderson, for petitioner.

Fred E. Green, Jr., for respondent.


MEMORANDUM OPINION


WHERRY, Judge:  This case is before the Court on a petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  Petitioner seeks review of respondent's rejection of his offer-in-compromise and subsequent decision to sustain the filing of a notice of Federal tax lien (NFTL) to collect petitioner's unpaid income tax liability for the 1991 tax year.  The issue for decision is whether respondent's settlement officer and her Appeals team manager abused their discretion in rejecting petitioner's offer-in-compromise and sustaining the filing of the NFTL.

Background

This case was submitted fully stipulated pursuant to Rule 122.  The parties' stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  Petitioner resided in Nevada when he filed his petition.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Unless stated otherwise, all dollar amounts are rounded to the nearest dollar.

**[*3]**   Petitioner was, at the time of the hearing in late 2010, 74 years old.  He has cancer, heart disease, diabetes, macular degeneration, and all of the complications due to these conditions.  According to petitioner's oncologist, petitioner was first diagnosed with prostate cancer in 1994, and he underwent a radical prostatectomy.  Unfortunately the prostate cancer recurred in 2007, and petitioner underwent radiation treatment.  By 2008 it was evident that the radiation had not been successful, and bone scans revealed early metastasis to the bones.   Petitioner is currently undergoing Lupron injections, which is a hormonal deprivation therapy, in an attempt to induce remission.  This treatment results in hot flashes, osteoporosis, and muscle loss.

In 2001, petitioner was convicted of criminal tax evasion under section 7201 with respect to his 1991 tax year and willfully making false or fraudulent statements under section 7206(1) with respect to his 1992, 1993, and 1994 tax returns.  He was sentenced to 30 months in Federal prison, two years' probation, and $50,000 in fines that are separate from the liability discussed herein.  Petitioner served his prison sentence, and he completed his probationary period in 2006.

**[*4]**   On August 25, 2008, respondent assessed against petitioner's account for the 1991 tax year a civil tax fraud penalty of $23,104 and interest of $53,385.[2] Respondent mailed a notice of a balance due and demand for payment of the 1991 tax liability to petitioner on August 25, 2008.[3]   On November 17, 2008, respondent received petitioner's Form 656, Offer in Compromise.  Using this form and section 7122, petitioner sought to settle his civil penalty liability for the 1991 tax year with an offer-in-compromise.  Petitioner sought the offer-in-compromise because of doubt as to collectibility as well as effective tax administration.[4]

Petitioner offered to pay $2,310.  As part of the offer-in-compromise, petitioner submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.  On this form petitioner reported that he received income of $5,449 per month from his pension and Social Security.  Petitioner listed total household expenses of $5,464, which included a $941 and a

---

[2]Petitioner's spouse is not jointly liable.

[3]A copy of the notice of a balance due and demand for payment was not included in the exhibits submitted to this Court.  We rely upon respondent's administrative record to ascertain the date on which the notice was mailed, which is noted in respondent's account history transcript.  Petitioner does not dispute the date of the mailed notice.

[4]On petitioner's Form 656, he claims that his age and health are special circumstances that render him unable to work in order to pay his liability.

[*5] $192 garnishment from his pension and Social Security, respectively, to satisfy his $50,000 court-ordered restitution payment. At the time petitioner submitted the offer-in-compromise, he resided in a condominium on Via Ventana in Mesquite, Nevada. Petitioner indicated on his Form 656 that his residence was a trust asset.

On February 9, 2009, Offer Specialist A. Weber began reviewing petitioner's offer-in-compromise. Offer Specialist Weber initially calculated petitioner's reasonable collection potential (RCP) at $19,218 during the investigation.[5] However, Offer Specialist Weber noted that petitioner possibly owned an interest in the condominium and further information regarding the Via Ventana condominium was required. On May 22, 2009, Offer Specialist Weber sent petitioner and his counsel, Sean Anderson (Mr. S. Anderson), a letter notifying them that a preliminary analysis of his offer-in-compromise had been

[5]Offer Specialist Weber determined petitioner's reasonable collection potential as follows: future income of $5,952 (monthly income of $5,449 less $5,325 in allowable expenses for a net difference of $124 × 48 months), which did not include petitioner's spouse's monthly income, and net equity in assets of $13,266 (bank account of $10,778, a 1997 Ford Explorer with a quick sale value of $1,928, and $560 in jewelry). Petitioner claims that this amount, $19,218, was his reasonable collection potential at the time his offer-in-compromise was rejected.

[*6] completed.  The letter indicated that petitioner's RCP was $250,810.[6]  The

significant increase in Offer Specialist Weber's calculation of petitioner's RCP

resulted from the inclusion of his community property share of the condominium's

assumed value in determining his net equity in assets.  Based on petitioner's RCP,

Offer Specialist Weber stated in a May 22, 2009, letter to petitioner that petitioner

had the ability to fully pay his liability.

Mr. S. Anderson sent respondent a letter on June 4, 2009, disputing the

factual information regarding how petitioner's RCP was calculated.  In the letter,

Mr. S. Anderson disagreed with the calculation of petitioner's future income, the

$10,778 bank account, and petitioner's ownership interest in the condominium

---

[6]The RCP was calculated as follows:  future income of $102,344.16 (monthly income of $6,483.67 less $4,351.50 for a net difference of $2,132.17 × 48 months).  Offer Specialist Weber included only petitioner's portion of the monthly household income and allocated 90% of the household expenses to petitioner in calculating petitioner's future income.  Offer Specialist Weber determined petitioner had net equity in assets of $148,466 that included:  a bank account of $10,778, a vehicle valued at $1,928, jewelry valued at $560, and petitioner's one-half interest in the condominium, which Offer Specialist Weber valued at a net amount of $135,200.  He initially valued the condominium at $338,000, reduced it to $270,400 on the basis of a 20% quick sale value reduction, and further reduced the value by one-half to reflect the one-half interest attributable to petitioner's spouse.

**[*7]** that Offer Specialist Weber determined should be included in petitioner's RCP.[7] On June 22, 2009, petitioner's offer-in-compromise was reassigned to Offer Specialist Carter to complete the investigation.

In a letter dated August 6, 2009, Offer Specialist Carter informed petitioner that his offer had been reassigned and that she agreed with the prior offer specialist's conclusion that petitioner's offer could not be accepted on the grounds of doubt as to collectibility. Offer Specialist Carter determined that petitioner had the ability to fully pay his liability because his RCP was $256,124, which resulted from a determination of the value of petitioner's future income of $112,800 and the value of his net equity in assets of $143,324.[8] In the same letter, Offer Specialist Carter stated that she was forwarding petitioner's offer with a recommendation for rejection and was requesting that an NFTL be filed with Clark County against petitioner's property.

---

[7]Petitioner claimed that he did not own a bank account worth $10,778 and that he did not have an ownership interest in the condominium since it was owned by a trust.

[8]Offer Specialist Carter increased petitioner's future income by including petitioner's spouse's income in total household income and decreased petitioner's net realizable equity by reducing the bank account value from $10,778 to $6,196. The offer specialist also determined that the condominium should be included in petitioner's RCP calculation because petitioner indicated on his amended Form 1040, U.S. Individual Income Tax Return, that he transferred the property to the trust.

**[*8]** Respondent's group manager sent petitioner a letter dated August 12, 2009, notifying petitioner that his offer-in-compromise had been rejected since it was determined that petitioner had the ability to fully pay his liability and explaining the appeal process to him. On August 18, 2009, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing under Section 6320. The NFTL was recorded at the County Recorder of Clark County in Las Vegas, Nevada, on August 24, 2009.

On September 10, 2009, Mr. S. Anderson filed an administrative appeal of the rejection of petitioner's offer-in-compromise, and on September 24, 2009, Mr. S. Anderson timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing), with respect to the notice of the filing of the NFTL. Petitioner did not dispute the underlying tax liability in his CDP hearing request but instead claimed that he had no ownership interest in the condominium because it was a trust asset.

In a letter dated September 20, 2010, Settlement Officer Renee Swall notified petitioner that a face-to-face CDP hearing was scheduled for October 7,

[*9] 2010.[9]  In order to consider petitioner's offer-in-compromise as a possible

collection alternative, Ms. Swall requested the following:

1.  A copy of the Ventana Trust Agreement with all attachments/exhibits.

2.  A copy of the original Deed of Trust for the real property known as 582 Via Ventana Drive, Mesquite, NV.

3.  A copy of any lease agreement or rental agreement that you have entered into for the property located at 582 Via Ventana Drive, Mesquite, NV.

4.  A completed Form 433-A, Collection Information Statement for Individuals, along with the verification listed on Page 4 of the Form 433-A.  Please note that a request for the Form 433-A was made in the CDP hearing letter that was mailed to you.  You only need to provide one completed Form 433-A along with the requested verification.

5.  Any other information that you would like me to consider, such as health issues.

In preparation for the CDP hearing Ms. Swall received petitioner's

completed Form 433-A, additional financial verification, the Ventana Trust

agreement, and a copy of the deed of trust for the condominium.  The face-to-face

CDP hearing was held on October 7, 2010.  During the hearing petitioner's

---

[9]Ms. Swall handled both the administrative appeal of the rejection of petitioner's offer-in-compromise and the CDP hearing since petitioner signed Form 14041, Waiver for Right to Request a New Settlement/Appeals Officer Under Section 6320 and/or 6330, which allowed the settlement officer to consider petitioner's offer-in-compromise as an alternative collection action during his CDP hearing.

[*10] rejected offer-in-compromise was discussed as a possible collection alternative with respect to his appeal regarding the NFTL filed by respondent when the offer was initially rejected. Petitioner, Mr. S. Anderson, and Ms. Swall also reviewed the trust documents and discussed whether petitioner held an interest in the condominium. According to respondent's transcript notes, during the meeting petitioner stated that he did not own the condominium and that the property was placed in the trust in 1995 when the property was purchased for $335,000. Ms. Swall indicated in her notes that she would need to verify with area counsel the treatment of the condominium.

The parties also discussed considering petitioner's offer on the grounds of doubt as to collectibility and effective tax administration. Ms. Swall noted during the meeting that the taxpayer was "elderly, * * * [has] health issues, and live[s] on fixed income." She further noted that petitioner was diagnosed with prostate cancer, has had two heart attacks, and is diabetic. At the end of the meeting Ms. Swall requested additional financial and medical verification from petitioner in order to consider his offer on the grounds of doubt as to collectibility and effective tax administration.

October 19, 2010, Mr. S. Anderson sent Ms. Swall a letter via facsimile in which he provided the additional information Ms. Swall requested, except for a

**[*11]** cardiologist's letter that was delayed, including applicable first pages of bank statements and written statements from petitioner's other physicians regarding petitioner's health. The written statements from petitioner's physicians stated that petitioner underwent treatment for prostate cancer and was currently receiving treatment to induce a remission and that petitioner also receives treatment for diabetes. In that same facsimile Mr. S. Anderson indicated that petitioner would be willing to pay $12,000 to resolve his outstanding liability. Mr. S. Anderson requested that Ms. Swall consider the offer of $12,000 based on special circumstances surrounding petitioner's deteriorating health and advanced age.

Ms. Swall sent Mr. S. Anderson a facsimile dated October 25, 2010, in response to Mr. S. Anderson's previous communication. Using the information petitioner provided, Ms. Swall determined that petitioner had the ability to fully pay his liability.[10] Ms. Swall rejected petitioner's offer of $12,000. However,

---

[10]Ms. Swall determined that petitioner had current monthly gross income of $6,383 and monthly allowable expenses of $5,275, which left $1,108 of monthly future discretionary income (multiplied by a factor of 48 months that results in $53,184 of future income). After receiving advice from respondent's area counsel, Ms. Swall included the value of the condominium when she calculated petitioner's equity in assets. According to Ms. Swall's notes, counsel determined that the condominium should be included for offer purposes because it was purchased and/or transferred to the trust after 1991 when the taxes accrued. The

(continued...)

**[\*12]** Ms. Swall suggested that an installment agreement of $217 per month for the first 12 months with an increase to $1,108 per month after one year would be appropriate.

Mr. S. Anderson and Ms. Swall held a telephone conference on November 1, 2010, as a followup to the correspondence from the October 25, 2010, facsimile. During the telephone conference Mr. S. Anderson disputed the inclusion of the value of the condominium in calculating petitioner's RCP. Mr. S. Anderson also stated that petitioner held only a one-fifth interest in the trust and that he had no control over the trust assets. Ms. Swall informed Mr. S. Anderson that after seeking advice from area counsel, she would continue to include the value of the condominium as an asset in determining petitioner's RCP. However, she indicated that she would reduce the value of the condominium to $47,840 to reflect petitioner's one-fifth interest in the property, which still left petitioner with the ability to fully pay his liability since his RCP still exceeded his liability. Mr. S. Anderson informed Ms. Swall that he would discuss the alternative installment agreement proposed in the October 25, 2010, facsimile with petitioner.

---

[10](...continued)
administrative record does not contain the counsel's advice. Ms. Swall valued the condominium at $299,000 using a Zillow.com assessment, reduced it to a quick sale value of $239,200, and further reduced the value to $119,600 based on petitioner's one-half interest in the property.

[*13] On November 22, 2010, Mr. S. Anderson sent Ms. Swall a letter disputing the inclusion of the condominium in her calculation of petitioner's RCP. Mr. S. Anderson also indicated in the letter that petitioner was willing to increase his offer to $20,000. Alternatively, Mr. S. Anderson stated that petitioner would agree to an installment agreement whereby petitioner would pay $217 per month for 18 months with an increase to $750 per month thereafter but with a total limit of $35,000. Ms. Swall sent Mr. S. Anderson a facsimile dated November 26, 2010, notifying petitioner that she could not recommend acceptance of petitioner's offer of $20,000 because she determined that, if the condominium was included as an asset, petitioner could fully pay and, if the condominium was not included, petitioner still had the ability pay more than the offer. Ms. Swall also rejected petitioner's proposed installment agreement terms as a result of the proposed payment cap of $35,000. Ms. Swall again brought up her originally proposed terms of $217 per month for the first year with an increase to $1,108 per month for the remainder of the agreement as an appropriate option.

Petitioner increased his offer to $30,000 in an email from Mr. S. Anderson to Ms. Swall dated November 30, 2010. According to Ms. Swall's case activity record notes, she called Mr. S. Anderson that same day to let him know that she could not accept petitioner's $30,000 offer because she believed on the basis of

[*14] petitioner's RCP that petitioner had the ability to pay more. Ms. Swall stated in her notes that petitioner has the ability to pay more on the basis of his future income without the inclusion of the one-fifth interest in the real property held in trust. During the telephone conference, Mr. S. Anderson requested that Ms. Swall reconsider petitioner's offer of $30,000 based on doubt as collectibility and effective tax administration given petitioner's age and health. Ms. Swall informed Mr. S. Anderson that she would discuss the $30,000 offer with her manager.

On December 2, 2010, Ms. Swall left Mr. S. Anderson a message stating that after having discussed the previous offer with her manager, she could not recommend acceptance of the offer because on the basis of his RCP petitioner has the ability to fully pay his liability and petitioner has not demonstrated that a significant hardship exists in order for an effective tax administration offer to be considered. Ms. Swall also informed Mr. S. Anderson that petitioner "has not shown that health issues are severe or terminal." However, she advised Mr. S. Anderson that if petitioner was still interested in the installment agreement previously discussed, he needed to call her back by December 3, 2010, or she would reject the offer and close the CDP case with no collection alternative finalized.

**[\*15]** On December 3, 2010, Mr. S. Anderson sent Ms. Swall an email stating that petitioner was willing to offer $37,500 in a final attempt to settle his liability. Ms. Swall informed Mr. S. Anderson on December 15, 2010, during a telephone conference that she could not accept the offer of $37,500 but mentioned her willingness to enter into the installment agreement of $217 per month for one year with an increase to $1,108 per month thereafter. Mr. S. Anderson indicated that he needed to discuss the available options with petitioner and would get back to her within one week. On December 23, 2010, Ms. Swall's notes indicate that she had not heard back from either Mr. S. Anderson or petitioner and that she was going to close the CDP case with no collection alternative finalized.

Respondent issued a notice of determination January 6, 2011, memorializing Ms. Swall's determinations. Petitioner timely petitioned this Court for review.

## Discussion

Section 6320(a) and (b) requires the Commissioner to notify a taxpayer in writing upon the filing of an NFTL and to provide the taxpayer with an opportunity for an administrative hearing. An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c).

[*16] If an administrative hearing is requested, the hearing is to be conducted by the Internal Revenue Service (IRS) Office of Appeals. Sec. 6320(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise any relevant issue with regard to the Commissioner's intended collection activities, including challenges to the appropriateness of the proposed collection actions, and alternative means of collection such as offers-in-compromise. Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing. Sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

Section 7122 establishes the authority of the Secretary to compromise tax liabilities. The IRS may compromise a taxpayer's liability on the grounds of doubt as to liability, doubt as to collectibility, or effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Whether an offer is accepted or rejected is left to the sound discretion of the IRS. Sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

**[\*17]** Following the hearing, the Appeals officer must determine among other things whether the proposed collection action should proceed.  In making the determination the Appeals officer shall take into consideration:  (1) whether the requirements of all applicable law and administrative procedure have been satisfied; (2) any relevant issues raised by the taxpayer during the section 6320 hearing; and (3) whether the proposed collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

This Court has jurisdiction to review the Appeals officer's determination.  Sec. 6330(d)(1); Reed v. Commissioner, 141 T.C. ___, ___ (slip op. at 8-9) (Sept. 23, 2013).  As is the case here, where the taxpayer's underlying liability was not properly at issue in the hearing, we review the determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.  An Appeals officer's determination is not an abuse of discretion unless the determination is arbitrary, capricious, or without sound basis in law or fact.  Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009) (a decision "based on an erroneous view of the law or a clearly erroneous assessment of the facts" is an abuse of discretion), aff'g in part T.C. Memo. 2006-166.  The Court of Appeals for

[*18] the Ninth Circuit, the court to which this case is appealable absent stipulation by the parties to the contrary, see sec. 7482(b)(1)(A), has held that the Court's "review is confined to the record at the time the Commissioner's decision was rendered", Keller v. Commissioner, 568 F.3d at 718.

Petitioner contends that Ms. Swall abused her discretion in rejecting his offer-in-compromise and in sustaining the NFTL. Petitioner asserts that Ms. Swall failed to properly consider his health condition. In addition, petitioner also contends that Ms. Swall's inclusion of an ownership interest in the Ventana property was an abuse of discretion.[11]

---

[11]Because we will remand this case for Appeals to clarify and supplement the findings regarding petitioner's health, we need not reach the issue of inclusion and/or value of a one-fifth interest in the Ventana trust property at this time. State law determines the existence of property rights to which Federal tax consequences, such as a tax lien, may attach. Aquilino v. United States, 363 U.S. 509, 512-514 (1960). Area counsel evidently advised Ms. Swall that she should treat the property as an asset for the purposes of reasonable collection potential because the tax accrued before the property was transferred to the trust, which implies that the property is a dissipated asset. But the administrative record is silent as to whether the settlement officer made any determination as to whether the Ventana property was a dissipated asset, and the notice of determination did not find that petitioner's transfer of his interest in the property was voidable, fraudulent, or intended to avoid paying his tax obligations. See Internal Revenue Manual (IRM) pt. 8.23.3.3.2.2(2) (Aug. 28, 2009) (stating that inclusion of a dissipated asset in the reasonable collection potential "must be clearly justified in the case file and documented in the case activity record"). On remand, respondent shall clarify the grounds for including or not including the trust property as an asset.

(continued...)

**[\*19]** The Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds "the taxpayer's reasonable collection potential; * * * i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies". <u>Murphy v. Commissioner</u>, 125 T.C. 301, 309 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006). The Commissioner has no duty to negotiate with a taxpayer before rejecting the taxpayer's offer-in-compromise. <u>Fargo v. Commissioner</u>, 447 F.3d 706, 713 (9th Cir. 2006), <u>aff'g</u> T.C. Memo. 2004-13; <u>Catlow v. Commissioner</u>, T.C. Memo. 2007-47, slip op. at 26, <u>aff'd in part, vacated in part</u> sub nom. <u>Keller v. Commissioner</u>, 568 F.3d 710 (9th Cir. 2009).

The Commissioner may accept an offer based on doubt as to collectibility that is less than the reasonable collection potential if special circumstances are present. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517; Internal Revenue

---

[11](...continued)

Further, in assigning a value to petitioner's interest in the Ventana property, Ms. Swall apparently divided the fair market value of the property by the number of trust beneficiaries, without verifying petitioner's ownership rights. These rights may have been substantially restricted by the trust instrument. Whether the calculation of petitioner's interest in the Ventana property is arbitrary we need not decide at this time. We also decline to address here respondent's use of Zillow.com to obtain an estimate of the value of the condominium. See <u>Jones v. Commissioner</u>, T.C. Memo. 2012-274, at \*28-\*30 (discussing the use of Zillow.com "Zestimates" to obtain estimates of fair market value but not deciding whether such estimates are appropriate in the CDP hearing context).

[*20] Manual (IRM) pt. 5.8.1.1.3(3) (Mar. 16, 2010). The regulations also discuss two scenarios under which the promotion of effective tax administration can be grounds for compromise: (1) if full collection "would cause the taxpayer economic hardship," and (2) if there are "compelling public policy or equity considerations". Sec. 301.7122-1(b)(3)(i) and (ii), Proced. & Admin. Regs. The Commissioner may accept effective tax administration offers even when the reasonable collection potential exceeds the liability. IRM pt. 5.8.11.2(2)(a) (Sept. 23, 2008).

Economic hardship exists where the taxpayer would "be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. To determine basic living expenses, the IRS looks at various factors including age, employment status and history, dependents, reasonably necessary expenses, cost of living, extraordinary circumstances, and other factors raised by the taxpayer. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. Public policy or equity considerations provide a basis for compromise "only where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner." Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs. In both scenarios

**[\*21]** compromise is not appropriate if it "would undermine compliance by taxpayers with the tax laws." Sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.[12]

The regulations also identify several factors helpful, but not conclusive or exclusive, in determining whether an offer should be accepted under the effective tax administration guidelines and whether acceptance would undermine confidence in the tax laws. Sec. 301.7122-1(c)(3), Proced. & Admin. Regs. Such factors include a taxpayer's long-term illness or medical condition that prevents the taxpayer from earning a living and the reasonable foreseeability "that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition". Sec. 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs. At the same time, a "history of noncompliance with the filing and

---

[12]The IRM states that "offers may be rejected on the basis of public policy if acceptance might in any way be detrimental to the interests of fair tax administration * * * provided no * * * [effective tax administration] issues exist." IRM pt. 5.8.7.6.1(1) (Sept. 23, 2008). The IRM further states that an offer should not be rejected on public policy grounds solely because "[a] taxpayer was criminally prosecuted for a tax or non-tax violation" and that "[t]he rejection narrative should discuss the specific public policy issues." Id. pt. 5.8.7.6.1(4) and (5). Despite notes indicating that the offer specialist was drafting a public policy rejection memorandum, Appeals ultimately decided not to reject the offer on these grounds, and we need not address petitioner's prior noncompliance with Federal income tax laws. See Oman v. Commissioner, T.C. Memo. 2006-231, slip op. at 11-12 (discussing the public policy rejection provision of the IRM).

[*22] payment requirements of the Internal Revenue Code" indicates that acceptance of the offer would tend to undermine compliance with the tax laws. Sec. 301.7122-1(c)(3)(ii)(A), Proced. & Admin. Regs.

Petitioner alleges that Appeals failed to properly consider his medical history in rejecting the offers. The case history indicates that Ms. Swall requested doctor's notes regarding petitioner's health and that petitioner was requesting "consideration of the special circumstances surrounding * * * [petitioner's] deteriorating health and advanced age". Ms. Swall did note in the case history that she could not recommend a lump-sum offer of $12,000 even considering petitioner's health problems and advanced age. But petitioner increased the offer several times, ultimately to $37,500. This last offer was rejected because, according to Ms. Swall's notes, petitioner "has not shown that health issues are severe or terminal". We struggle to reconcile this statement with the physician's diagnosis that petitioner's prostate cancer has spread to his bones.

It is unclear to the Court the extent to which Appeals considered the issue of petitioner's health. Ms. Swall's notes swing from describing petitioner's problems as deteriorating to describing them as not being severe or terminal. The notice of determination does not help, being devoid of any mention of petitioner's health condition. Because it is not apparent from the notice or Ms. Swall's notes whether

**[\*23]** Appeals properly considered petitioner's health in rejecting the doubt as to collectibility-special circumstances offer and the effective tax administration offer, we lack sufficient information to make a determination as to whether Appeals abused its discretion in rejecting petitioner's last offer.

In such a situation, we may remand collection due process cases to Appeals to develop the record. See Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010) (remanding "to clarify and supplement the administrative record" when we determined that the administrative record was "insufficient to enable us to properly evaluate whether the Appeals Office abused its discretion"); Hoyle v. Commissioner, 131 T.C. 197, 204-205 (2008) (remanding so that Appeals could clarify the record as to why it determined that all requirements of applicable law were met); see also Pomeroy v. Commissioner, T.C. Memo. 2013-26, at \*19-\*20 (remanding for Appeals to clarify and supplement the record as to its consideration of the taxpayers' health problems). Accordingly, we will remand this case to the Appeals Office to allow the parties to clarify and supplement the record as appropriate. We will retain jurisdiction to preserve petitioner's rights to judicial review of the final administrative determination. See Wadleigh v. Commissioner, 134 T.C. at 299.

**[*24]** The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued.